# United States Court of Appeals
## For the Eighth Circuit

_____

No. 10-3076

_____

Shirley Phelps-Roper

*Plaintiff - Appellee*

v.

Chris Koster, in his official capacity as Attorney General for the State of Missouri

*Defendant - Appellant*

Mark Goodwin, in his official capacity as Prosecuting Attorney for Carroll County

*Defendant*

Jeremiah W. Nixon, in his official capacity as Governor for the State of Missouri;
Ronald K. Repogle, in his official capacity as Superintendent of the Missouri State
Highway Patrol

*Defendants - Appellants*

Angie Hemphill Wright, in her official capacity as Prosecuting Attorney for
Laclede County; Raymond Blackburn, in his official capacity as Chief of the
Lebanon Police Department; Richard E. Wrinkle, in his official capacity as Sheriff
of Laclede County; Laclede County, Missouri

*Defendant*s

------------------------------

United States

*Amicus Curiae - Amicus on Behalf of Appellant*

The Thomas Jefferson Center For The Protection of Free Expression; Christina Wells

*Amici on Behalf of Appellee*

_____

Appeal from United States District Court
for the Western District of Missouri - Jefferson City

_____

Submitted: September 19, 2011
Filed: April 26, 2013

_____

Before WOLLMAN, BYE, and SHEPHERD, Circuit Judges.

_____

BYE, Circuit Judge.

Shirley Phelps-Roper brought this action under 42 U.S.C. § 1983 seeking declaratory and injunctive relief against the State of Missouri after Missouri passed funeral protest laws Mo. Rev. Stat. § 578.501 and Mo. Rev. Stat. § 578.502. Following this court's decision in Phelps-Roper v. Nixon, 545 F.3d 685 (8th Cir. 2008), the district court entered a preliminary injunction prohibiting the enforcement of the statutes. The district court later declared both statutes unconstitutional under the First and Fourteenth Amendments and granted Phelps-Roper's motion for summary judgment. Nixon has since been abrogated by this court's recent en banc decision in Phelps-Roper v. City of Manchester, Mo., 697 F.3d 678 (8th Cir. 2012). We nonetheless affirm the district court's summary judgment decision with respect to Mo. Rev. Stat. § 578.501. However, we reverse the district court's grant of

summary judgment with respect to Mo. Rev. Stat. § 578.502, and remand for further proceedings to address issues not reached by the district court in its original decision.

I

Shirley Phelps-Roper is a member of the Westboro Baptist Church, a group espousing the belief God is punishing America due to its sins, particularly its tolerance of homosexuality. In 1989, Westboro members began picketing in order to publicize their religious message and fulfill their asserted obligation to warn society of God's wrath. Since 1993, they have picketed near funerals of gay persons, AIDS victims, persons whose lifestyles they believed to be sinful, and persons who have actively supported allegedly sinful activities.

In 2005, Westboro members began picketing near the funerals of American Soldiers, Sailors, Airmen, and Marines ("soldiers"). Phelps-Roper claims this public platform is the most apposite place to deliver her religious message to her intended audience in a timely and relevant manner. At the soldiers' funerals, Westboro members display signs containing such statements as "God Hates Fags," "Divorce Plus Remarriage Equals Adultery," "God Hates Adultery," "God Hates the USA," "Thank God for Dead Soldiers," "Priests Rape Boys," "Fags Doom Nations," and "9-11: Gift From God."

Phelps-Roper asserts her pickets are peaceful and conducted on public streets and sidewalks. Moreover, she claims she has no desire to disrupt any funeral proceeding or to interfere with ingress to, or egress from, any location where a funeral is held. In total, as of early 2010, Westboro members had engaged in approximately 42,675 pickets, including approximately 530 associated with funerals.[1]

---

[1]Phelps-Roper cites one incident at a 1993 picket—unrelated to a funeral—where violence occurred. The district court concluded the State's claim that other

On August 5, 2005, Westboro members picketed the funeral of 21-year-old Specialist Edward Lee Myers in St. Joseph, Missouri, resulting in an emotional response from Myers's family. Responding to this incident, the Missouri Legislature passed a bill creating "Spc. Edward Lee Myers' Law," Mo. Rev. Stat. § 578.501 (2006), which it later replaced with a substitute version along with sections 578.502 and 578.503. In its current form, section 578.501 provides:

> 2. It shall be unlawful for any person to engage in picketing or other protest activities in front of or about any location at which a funeral is held, within one hour prior to the commencement of any funeral, and until one hour following the cessation of any funeral. Each day on which a violation occurs shall constitute a separate offense. Violation of this section is a class B misdemeanor, unless committed by a person who has previously pled guilty to or been found guilty of a violation of this section, in which case the violation is a class A misdemeanor.
>
> 3. For the purposes of this section, "funeral" means the ceremonies, processions and memorial services held in connection with the burial or cremation of the dead.

Mo. Rev. Stat. §§ 578.501(2), (3). Missouri also passed section 578.502 as a fall-back provision to section 578.501 in the event the latter is declared unconstitutional. See Mo. Rev. Stat. § 578.503. Section 578.502 sets forth, in pertinent part:

> It shall be unlawful for any person to engage in picketing or other protest activities within three hundred feet of or about any location at which a funeral is held, within one hour prior to the commencement of any funeral, and until one hour following the cessation of any funeral. Each day on which a violation occurs shall constitute a separate offense. Violation of this section is a class B misdemeanor, unless committed by

___

incidents had occurred was "immaterial, given the numerous pickets conducted by Plaintiff over the years." Phelps-Roper v. Koster, 734 F. Supp. 2d 870, 873 n.1 (W.D. Mo. 2010).

a person who has previously pled guilty to or been found guilty of violation of this section, in which case the violation is a class A misdemeanor.

Mo. Rev. Stat. § 578.502(2). After the Missouri Legislature enacted the statutes, Phelps-Roper began contacting law enforcement officials in advance of planned protests to determine where Westboro members could peacefully picket in compliance with the law. She asserts local law enforcement officials in various counties interpreted the statutes widely, including placing various geographic and temporal restrictions on Westboro members. Phelps-Roper also contends certain law enforcement officials have enforced section 578.502, despite the statute never having gone into effect.

Due to the varying interpretations of the statute and inconsistent application to counter-protests, Phelps-Roper filed this suit under 42 U.S.C. § 1983 seeking declaratory and injunctive relief. The district court initially denied her request for a preliminary injunction, but this court reversed. Nixon, 545 F.3d at 694. Following Nixon, the district court entered a preliminary injunction. While the statute was enjoined, Westboro members held approximately thirty-three pickets in Missouri without incident through January 2010. On August 16, 2010, the district court declared sections 578.501 and 578.502 to be unconstitutional under the Free Speech Clause of the First Amendment, as made applicable to the States by the Fourteenth Amendment. The court granted Phelps-Roper's motion for summary judgment in part, denied it in part as moot, and denied the State's motion for partial summary judgment as moot.[2] Missouri appeals.

---

[2]Because the district court concluded sections 578.501 and 578.502 were unconstitutional under the Free Speech Clause, it deemed moot and did not consider Phelps-Roper's arguments in the alternative that sections 578.501 and 578.502 were also in violation of the Free Exercise Clause of the First Amendment, the Due Process Clause of the Fourteenth Amendment, and Missouri statutory and constitutional law.

II

"This court reviews a district court's grant of summary judgment de novo, drawing all reasonable inferences, without resort to speculation, in favor of the non-moving party." Lisdahl v. Mayo Found., 633 F.3d 712, 720 (8th Cir. 2011). Summary judgment is proper unless there is a genuine dispute of material fact that might affect the outcome of the suit. Id.

A. The Fighting Words Doctrine

We first address whether Phelps-Roper's speech is entitled to constitutional protection. "The First Amendment, applicable to the States through the Fourteenth Amendment, provides that 'Congress shall make no law . . . abridging the freedom of speech.'" Virginia v. Black, 538 U.S. 343, 358 (2003). "The hallmark of the protection of free speech is to allow 'free trade in ideas'—even ideas that the overwhelming majority of people might find distasteful or discomforting." Id. (quoting Abrams v. United States, 250 U.S. 616, 630 (1919) (Holmes J., dissenting)). "Free speech protections do not extend, however, to certain categories or modes of expression, such as obscenity, defamation, and fighting words." Doe v. Pulaski Cnty. Special Sch. Dist., 306 F.3d 616, 622 (8th Cir. 2002) (en banc). "Thus, for example, a State may punish those words 'which by their very utterance inflict injury or tend to incite an immediate breach of the peace.'" Black, 538 U.S. at 359 (quoting Chaplinsky v. New Hampshire, 315 U.S. 568, 572 (1942)). The Supreme Court has "consequently held that fighting words—'those personally abusive epithets which, when addressed to the ordinary citizen, are, as a matter of common knowledge, inherently likely to provoke violent reaction'—are generally proscribable under the First Amendment." Id. (quoting Cohen v. California, 403 U.S. 15, 20 (1971)).

The district court concluded Phelps-Roper's speech, although it "may be repugnant to listeners," was entitled to constitutional protection. Koster, 734 F. Supp.

2d at 876. We agree. First, it is doubtful Phelps-Roper's words are "inherently likely to provoke violent reaction." Black, 538 U.S. at 359. In truth, there have been few to no reported instances of violence associated with Westboro's 500 protests at military funerals, undercutting the notion Phelps-Roper's protests are "'likely to cause an average addressee to fight.'" Buffkins v. City of Omaha, Douglas Cnty., Neb., 922 F.2d 465, 472 (8th Cir. 1990) (quoting Chaplinsky, 315 U.S. at 573). Nor is there any evidence Phelps-Roper intends to provoke such violence.[3] See Cohen, 403 U.S. at 20 ("There is . . . no showing that anyone who saw [the defendant] was in fact violently aroused or that [the defendant] intended such a result.").

Moreover, in light of the Supreme Court's recent discussion in Snyder v. Phelps, 131 S. Ct. 1207 (2011), we cannot say Phelps-Roper's words play "no essential part of any exposition of ideas, and are of such slight social value as a step to truth that any benefit that may be derived from them is clearly outweighed by the social interest in order and morality." Chaplinsky, 315 U.S. at 572. With regard to Westboro's protests, Snyder recognized, "[w]hile these messages may fall short of refined social or political commentary, the issues they highlight—the political and moral conduct of the United States and its citizens, the fate of our Nation, homosexuality in the military, and scandals involving the Catholic clergy—are matters of public import." 131 S.Ct. at 1218. Given the Court's pronouncement, the district court, much less this court on appeal, would be hard-pressed to reach a contrary finding regarding the value of Westboro's speech.[4]

---

[3]Unlike such activities as cross-burning by the Ku Klux Klan, "[t]he funeral picketers are not engaging in activity that either presents an actual threat of violence (they are, in fact, completely nonviolent and refuse even to engage in civil disobedience) or that reflects a historical understanding of an implied or actual threat of violence." Stephen R. McAllister, Funeral Picketing Laws and Free Speech, 55 U. Kan. L. Rev. 575, 591 (2007).

[4]In addition, although Snyder was based upon a tort claim by a father of a deceased military service member, the Court noted, "there is no suggestion that the

Finally, even if Phelps-Roper's words fall within the fighting words doctrine and the words have no social value whatsoever, Missouri's statutes regulate *all* "picketing and protest activities" around funerals—not merely those pickets involving fighting words. Mo. Rev. Stat. §§ 578.501, 578.502. Such a broad prohibition poses significant problems because the statutes unquestionably reach protected expression. See, e.g., <u>City of Houston, Tex. v. Hill</u>, 482 U.S. 451, 465 (1987) ("This . . . ordinance, however, is not narrowly tailored to prohibit only disorderly conduct or fighting words[.]"); <u>Gooding v. Wilson</u>, 405 U.S. 518, 523 (1972) ("Our decisions since <u>Chaplinsky</u> have continued to recognize state power constitutionally to punish 'fighting' words under carefully drawn statutes not also susceptible of application to protected expression."). For instance, Missouri's statutes are unlike that in Maryland, which specifically prohibits speech "that is likely to incite or produce an imminent breach of the peace," Md. Code Ann., Criminal Law, § 10-205(b) (2011), or that in Virginia, which prohibits disruptions of funerals with speech which "has a direct tendency to cause acts of violence by the person or persons at whom, individually, the disruption is directed," Va. Code Ann. § 18.2-415(B)(ii) (2006).

In sum, we conclude Phelps-Roper's words are not bereft of any constitutional protection, and we affirm the district court with respect to the fighting words doctrine.

B. The Burden of Proof

Having concluded Phelps-Roper's words are entitled to First Amendment protection, we proceed to consider whether Missouri's funeral protest laws violate Phelps-Roper's First Amendment rights. At the outset, we must first address the State's argument the district court erroneously assigned it the burden of proof instead

---

speech at issue falls within one of the categorical exclusions from First Amendment protection, such as those for obscenity or 'fighting words.'" 131 S.Ct. at 1215 n.3 (internal quotation marks and citation omitted).

of Phelps-Roper, who is challenging the constitutionality of the law. The State contends its legislative enactments are entitled to a presumption of constitutionality, and thus Phelps-Roper faces a heavy burden in advancing her claim.

"[A]lthough a duly enacted statute normally carries with it a presumption of constitutionality, when a regulation allegedly infringes on the exercise of first amendment rights, the statute's proponent bears the burden of establishing the statute's constitutionality." Ass'n of Cmty. Orgs. for Reform Now v. City of Frontenac, 714 F.2d 813, 817 (8th Cir. 1983); see also United States v. Playboy Entm't Group, Inc., 529 U.S. 803, 816 (2000) ("When the Government restricts speech, the Government bears the burden of proving the constitutionality of its actions."). "Hence, the clear rule in this circuit is that in response to a First Amendment challenge, the proponent of the regulation must demonstrate that the government's objectives will not be served sufficiently by means less restrictive of first amendment freedoms." Pursley v. City of Fayetteville, Ark., 820 F.2d 951, 956 (8th Cir. 1987) (internal quotation marks and citation omitted); see also Casey v. City of Newport, R.I., 308 F.3d 106, 110-11 (1st Cir. 2002) (placing the burden of proof on the City to demonstrate its content-neutral restrictions were narrowly tailored); Hays Cnty. Guardian v. Supple, 969 F.2d 111, 118 (5th Cir. 1992) (noting the government bears the burden of proof with regard to content-neutral regulations).

In this case, Phelps-Roper established she engages in expressive conduct protected by the First Amendment. Under our case law, the district court properly placed the burden of proof on the State as the proponent of the funeral protest laws, which restrict Phelps-Roper's right to engage in expressive activity.

C. Whether Missouri's Law Violates Phelps-Roper's First Amendment Rights

Like other funeral protest laws we have considered, Missouri's funeral protest law regulates speech in traditional public fora. See City of Manchester, Mo., 697 F.3d at 686. The level of scrutiny we apply to the regulation of speech in traditional

public fora is determined by whether the regulation is content based or content neutral. See Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 45 (1983). In determining whether a statute is content based or content neutral, "[t]he 'plain meaning of the text controls, and the legislature's specific motivation for passing a law is not relevant, so long as the provision is neutral on its face.'" City of Manchester, Mo., 697 F.3d at 688 (quoting Nixon, 545 F.3d at 691).

Recently, this court, sitting en banc, determined a city funeral protest ordinance was content neutral because it regulated people without regard to speech on any particular topic or viewpoint. Id. at 688-89. The court concluded the ordinance instead "simply limits when and where picketing and other protest activities may occur in relation to a funeral or burial service without regard for the speaker's viewpoint." Id. at 689. Based on Missouri's regulation of all "picketing or other protest activities," regardless of content or viewpoint, we similarly conclude the funeral protest laws at issue here are content neutral. See id.

Content-neutral time, place, and manner regulations are tested under intermediate scrutiny, which questions whether the regulations are "'narrowly tailored to serve a significant government interest' and allow for 'ample alternative channels for communication.'" Id. at 686 (quoting Ward v. Rock Against Racism, 491 U.S. 781, 791 (1989)).

### 1. Whether Missouri has a Significant Government Interest

In the order denying a preliminary injunction, the district court held Missouri had a significant interest in protecting the dignity of funeral services and the privacy of family and friends of the deceased during their time of mourning. This court in Nixon reversed, noting, "[t]he Supreme Court has not addressed this issue, but has recognized the state's interest in protecting citizens from unwanted communications while in their homes and when otherwise 'captive.'" 545 F.3d at 691 (internal

-10-

citations omitted). As defined in <u>Frisby v. Schultz</u>, 487 U.S. 474, 487 (1988), the "captive" audience refers to those who "cannot avoid the objectionable speech." Although <u>Nixon</u> recognized the Sixth Circuit had extended the captive audience doctrine outside the residential context to mourners at a funeral, see <u>Phelps-Roper v. Strickland</u>, 539 F.3d 356, 362-67 (6th Cir. 2008), the court concluded the Eighth Circuit's prior holding in <u>Olmer v. Lincoln</u>, 192 F.3d 1176, 1178 (8th Cir. 1999), had established "the government has no compelling interest in protecting an individual from unwanted speech outside of the residential context." <u>Nixon</u>, 545 F.3d at 692. Based on <u>Olmer</u>, <u>Nixon</u> concluded, "Phelps-Roper [was] likely to prove any interest the state has in protecting funeral mourners from unwanted speech is outweighed by the First Amendment right to free speech." 545 F.3d at 692.

However, the holding of <u>Nixon</u> with respect to the significant governmental interest at issue was recently overturned by the en banc court. In <u>City of Manchester, Mo.</u>, the court noted <u>Nixon</u>'s analysis of the captive audience doctrine was incomplete because it had failed to consider the Supreme Court's pertinent decisions in <u>Madsen v. Women's Health Center, Inc.</u>, 512 U.S. 753 (1994), and <u>Hill v. Colorado</u>, 530 U.S. 703 (2000). <u>City of Manchester, Mo.</u>, 697 F.3d at 691. Based on those decisions, the court concluded "mourners attending a funeral or burial share a privacy interest analogous to those which the Supreme Court has recognized for individuals in their homes, and for patients entering a medical facility." <u>Id.</u> at 692 (internal citations omitted).

Given this court's en banc decision in <u>City of Manchester, Mo.</u>, we conclude Missouri "has shown a significant government interest in protecting the peace and privacy of funeral attendees for a short time and in a limited space so that they may express the respect they seek to accord to the deceased person who was once their own." <u>Id.</u> at 693 (internal quotation marks and citation omitted).

## 2. Whether the Law is Narrowly Tailored

Missouri contends its funeral protest laws are narrowly tailored because they do not "burden substantially more speech than is necessary to further the government's legitimate interests." Bd. of Trs. of State Univ. of New York v. Fox, 492 U.S. 478 (1989) (quoting Ward, 491 U.S. at 799). Missouri claims the laws are not a general ban on all "picketing or other protest activities" at any place or any time, but are aimed at eliminating specific harms and protecting the dignity of funerals. In particular, Missouri argues a buffer around a funeral is permissible, as the statutes only proscribe protests one hour before and after a funeral, and only in certain areas—in front of or about any location at which a funeral is held in the case of section 578.501, or, in the case of section 578.502, within three hundred feet of or about any location at which a funeral is held.

A law regulating the time, place, or manner in which protected speech may occur "must be narrowly tailored to serve the government's legitimate, content-neutral interests but . . . need not be the least restrictive or least intrusive means of doing so." Ward, 491 U.S. at 798. However, the regulation may not "burden substantially more speech than is necessary to further the government's legitimate interests." Id. at 799. "Whether [a law] is narrowly tailored or not depends on what it seeks to regulate." City of Manchester, Mo., 697 F.3d at 693 (citing Ward, 491 U.S. at 798-99).

Phelps-Roper contends section 578.501 burdens more speech than is necessary because the statute fails to define the limits of the area around funerals in which disruptive speech is prohibited. We agree. By banning picketing and protest activities "in front of or about" a funeral, section 578.501 creates a buffer zone of an indeterminate size around a location holding a funeral. The undefined spatial limits of the buffer zone allow for the proscription of pickets and protests directed at a funeral but which may take place at a great distance from that funeral and have no

-12-

chance of disrupting it. Consequently, the failure to define the spatial extent of the buffer zone in section 578.501 burdens substantially more speech than is necessary to serve Missouri's interest in protecting the privacy of funeral attendees, and prevents section 578.501 from being narrowly tailored.

Phelps-Roper next contends both statutes burden substantially more speech than necessary because the phrase "picketing and other protest activities" is not limited to speech which targets and disrupts a funeral service. Neither section 578.501 nor section 578.502 defines "picketing and other protest activities." We have noted previously that, in the absence of a statutory definition, "'[p]icketing' can include a wide variety of activities, including prayer." Veneklase v. City of Fargo, 248 F.3d 738, 743 (8th Cir. 2001) (citing Douglas v. Brownell, 88 F.3d 1511, 1521 (8th Cir. 1996)).

However, there is no per se requirement a statute must define these terms. The Supreme Court has upheld a similar statute which also lacked a statutory definition of the proscribed activities. See Frisby, 487 U.S. at 482. In Frisby, the Supreme Court upheld an ordinance which made it "unlawful for any person to engage in picketing before or about the residence or dwelling of any individual . . . ." Id. at 477 (quoting ordinance). Courts will interpret statutes to avoid constitutional issues. Id. at 483 (citations omitted). Relying on this principle, the Court reasoned that, although "[t]he precise scope of the ban [was] not further described within the text of the ordinance . . . the ordinance [was] readily subject to a narrowing construction that avoids constitutional difficulties." Id. The Court drew its narrow construction of the character of the speech the drafters had intended to proscribe by using the terms the drafters had chosen when defining the location from which they had proscribed the speech. See id. ("Specifically, the use of the singular form of the words 'residence' and 'dwelling' suggests that the ordinance is intended to prohibit only picketing focused on, and taking place in front of, a particular residence."). We employed a similar approach in City of Manchester, Mo. to narrowly construe an

-13-

ordinance prohibiting picketing "and other protest activities" not to apply to picketing and protest activities unwittingly occurring in the buffer zone. City of Manchester, Mo., 697 F.3d at 693-94.

Using this approach, we conclude the phrase "picketing and other protest activities" in sections 578.501(2) and 578.502(2) is best understood to mean only picketing and protest activities which are directed at a funeral as defined by the statutes. We find support for this interpretation in the Missouri Legislature's use in sections 578.501(2) and 578.502(2) of the phrase "location at which a funeral is held" to describe the focus of the buffer zones and definition in section 578.501(3) and 578.502(3) of "funeral" as "ceremonies, processions and memorial services held in connection with the burial or cremation of the dead." See also Strickland, 539 F.3d at 367-68 (6th Cir. 2008) (finding support for its narrow construction of "picketing and other protest activities" in the drafters' use of the singular form of the word identifying the location in which the drafters had proscribed speech). Under this narrow construction, the Missouri Legislature's choice to use the phrase "picketing and other protest activities" without further defining it, does not cause sections 578.501 or 578.502 to burden substantially more speech than necessary to serve Missouri's interest.

Finally, Phelps-Roper contends both statutes restrict substantially more speech than necessary because the statutes prohibit picketing and other protest activities in the areas which surround processions. We agree. Because the only definition provided by Missouri's statutes sets forth that a "'funeral' means the ceremonies, processions and memorial services held in connection with the burial or cremation of the dead," Mo. Rev. Stat. §§ 578.501(3), 578.502(3), the statutes have the effect of creating buffer zones in which picketing and protest activities are prohibited and which float through the city as funeral processions make their way through public streets. See Schenck v. Pro-Choice Network of W.N.Y., 519 U.S. 357, 377 (1997) (concluding the floating buffer zones in the case were "a broad prohibition, both

because of the type of speech that is restricted and the nature of the location"). The statute's inclusion of processions into the definition of "funeral" makes the Missouri statutes substantially broader than other funeral protest laws—most notably, the ordinance upheld by the en banc court. See City of Manchester, Mo., 697 F.3d at 694 ("Manchester's amended ordinance eliminated any restrictions on processions. It was narrowed to eliminate restrictions on any such floating zones, and it now only places limitations within 300 feet of a funeral or burial."). Given the impermissibly broad reach of Missouri's funeral protest statutes, we conclude Missouri's chosen means of protecting the privacy of funeral attendees are not narrowly tailored as drafted because they are "substantially broader than necessary to achieve the government's interest." Ward, 491 U.S. at 800.

### a. Severability

However, our conclusion does not necessarily require us to invalidate the entirety of both statutes as unconstitutional. See Roach v. Stouffer, 560 F.3d 860, 870 (8th Cir. 2009) (discussing severability). Rather, we must "look to state law to determine the severability of a state statute." Id. Missouri law requires courts to sever unconstitutional provisions of statutes and give effect to the remaining statutory text

> unless the court finds the valid provisions of the statute are so essentially and inseparably connected with, and so dependent upon, the void provision that it cannot be presumed the legislature would have enacted the valid provisions without the void one; or unless the court finds that the valid provisions, standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent.

Mo. Rev. Stat. § 1.140. The Missouri Supreme Court has held "[s]tatutes are presumptively severable" and "should be upheld to the fullest extent possible." Gen. Motors Corp. v. Dir. of Revenue, 981 S.W.2d 561, 568 (Mo. 1998) (internal citations omitted).

Here, both section 578.501 and section 578.502 are unconstitutional, at least in part because of the inclusion of the word "processions" into the definition of a "funeral." The word "processions" is, however, severable from the rest of the statute. The word "processions" appears just once in each statute, and only as part of a serial list. See Mo. Rev. Stat. §§ 578.501(3), 578.502(3). The only change to each statute which would result from severing the word "processions" is a narrower definition of a "funeral" as "the ceremonies and memorial services held in connection with the burial or cremation of the dead." See Mo. Rev. Stat. §§ 578.501(3), 578.502(3). Under these circumstances, the remaining provisions of the statutes are not "so essentially and inseparably connected with, and so dependent upon, [the word 'processions'] that it cannot be presumed the legislature would have enacted the valid provisions with the void [word]." Mo. Rev. Stat. § 1.140; Gen. Motors Corp., 981 S.W.2d at 568. Accordingly, we may sever the word "processions" from section 578.501(3) and from section 578.502(3).

Once the word "processions" is severed from section 578.502(3), the three-hundred-foot buffer zone section 578.502(2) establishes within an hour before and after a funeral, is identical to the ordinance we considered in City of Manchester, Mo., and determined was narrowly tailored. City of Manchester, Mo., 697 F.3d at 694. The same result is compelled here.

However, severing the word "processions" from section 578.501(3) does not cure the lack of a definition of the spatial extent of the buffer zone established pursuant to section 578.501(2). In the case of section 578.501, the failure to define the spatial extent of the buffer zone is not the result of including a void term but rather the legislature's failure to include further clarifying provisions. Accordingly, we may not cure the remaining constitutional issue in section 578.501 by severing the provisions establishing the buffer zone. Nor may we insert terms into section 578.501 to clarify the spatial limits of the buffer zone because we have an obligation

-16-

"to refrain from embellishing statutes by inserting language [the legislature] has opted to omit." United States v. McIntosh, 236 F.3d 968, 972 (8th Cir. 2001) (quoting Root v. New Liberty Hosp. Dist., 209 F.3d 1068, 1070 (8th Cir. 2000). We are, therefore, unable to uphold any portion of Mo. Rev. Stat. § 578.501.

Because we conclude section 578.501 is not narrowly tailored to serve Missouri's interest in protecting peace and privacy of funeral attendees, we may affirm the district court's holding that Mo. Rev. Stat. § 578.501 violates the Free Speech Clause of the First Amendment. However, we must go on to consider whether section 578.502 allows for ample alternative channels of communication.

### 3. Ample Alternative Channels

Once a court determines a law is "narrowly tailored to serve a significant governmental interest," the next question is whether the law "allow[s] for ample alternative channels for communication." City of Manchester, Mo., 697 F.3d at 686 (internal quotation marks omitted). Because section 578.502, once subject to a narrowing construction and the severance of the word "processions," is virtually identical to the ordinance in City of Manchester, Mo., our reasoning in that case is dispositive here. Section 578.502, like the ordinance in City of Manchester, Mo., restricts speech only "during a short period immediately surrounding a funeral service." Id. at 695. Other than this minor time and place restriction, "[s]peakers retain great latitude to express any viewpoint or discuss any topic at nearly any location and nearly any time" in the state of Missouri. Id. Thus, because section 578.502 is narrowly tailored to serve Missouri's interest in protecting the peace and privacy of funeral attendees and leaves open ample alternative channels for communication of Phelps-Roper's message, we must reverse the district court's grant of summary judgment with respect to Mo. Rev. Stat. § 578.502.

## III

We affirm the district court's judgment to the extent the district court held Mo. Rev. Stat. § 578.501 violates the Free Speech Clause of the First Amendment. We reverse the district court's judgment to the extent it held Mo. Rev. Stat. § 578.502 is unconstitutional under the Free Speech Clause, sever the term "processions" from section 578.502(3), and hold the remaining provisions of section 578.502 are narrowly tailored time, place, and manner restrictions. Finally, we remand for the district court to address in the first instance Phelps-Roper's alternate challenges that Mo. Rev. Stat. § 578.502 violates the Free Exercise Clause of the First Amendment, the Due Process Clause of the Fourteenth Amendment, and Missouri statutory and constitutional law. See Neighborhood Enter., Inc. v. City of St. Louis, Mo., 644 F.3d 728, 738 (8th Cir. 2011) (reversing and remanding for district court to address issues it had not reached).

_____