Billy Roy Wilson, UNITED STATES DISTRICT JUDGE
Pending is Plaintiffs' Motion for Preliminary Injunction (Doc. No. 2). Defendant has responded and Plaintiffs have replied.[1] Also pending is Defendant's Motion to Dismiss (Doc. No. 10). Plaintiff has responded.[2] For the reasons set out below, Plaintiffs' Motion is GRANTED and Defendant's Motion is DENIED.
I. BACKGROUND[3]
Plaintiffs Michael Andrew Rodgers and Glynn Dilbeck have previously been charged with violating the previous version of Section 5-71-213(a)(3) of the Arkansas Code, which made it a crime to linger or remain "in a public place or on the premises of another person for the purpose of begging."[4] In Rogers I , I held that the previous version of Section 5-71-213(a)(3) was unconstitutional and permanently enjoined Defendant from enforcing it.[5]
In April 2017, the Arkansas General Assembly amended Section 5-71-213(a)(3), to read as follows:
A person commits the offense of loitering if he or she ... [l]ingers or remains on a sidewalk, roadway, or public right-of-way, in a public parking lot or public transportation vehicle or facility, or on private property, for the purpose of asking for anything as charity or a gift:
(A) In a harassing or threatening manner;
(B) In a way likely to cause alarm to the other person; or *931 (C) Under circumstances that create a traffic hazard or impediment.[6]
Plaintiffs ask that I enjoin Defendant from enforcing Section 5-71-213(a)(3) because, they allege, it violates the First and Fourteenth Amendments to the Federal Constitution.[7]
Defendant asks that I dismiss Plaintiffs' claims on three grounds: (1) Plaintiffs do not have standing, (2) I should abstain, and (3) Section 5-71-213(a)(3) is not facially unconstitutional or unconstitutionally vague. Defendant requests that if I do issue a preliminary injunction, that it only apply to Plaintiffs in this lawsuit.
II. DISCUSSION
At the outset, I want to again thank each of the lawyers for their vigorous, able, and courteous presentations in print and vivo voce.
Normally, I don't include comments by counsel in an order, but in this case I feel moved to do so. With tongue in cheek, I pointed out that I suspected most Arkansawyers are opposed to panhandling and that, therefore, Plaintiffs' lawyer, Ms. Bettina Brownstein, was urging me to enter an order that would render me unpopular. She promptly replied, "You know what, Your Honor? I don't know that you're that popular already. Sorry."[8] Thus she removed this worry from my consideration.
In the abstract, all of us love the First Amendment; but not so much when someone makes a statement that we consider obnoxious. Yet the purpose of the First Amendment is to protect unpopular views, written or spoken. Our Founders realized full well that the rights protected by the Bill of Rights are antimajoritarian-they were keenly aware of the persecution of minorities by the impassioned majority after the then-recent French Revolution.
A. Standing
To have standing to challenge the constitutionality of a criminal statute, a plaintiff must normally be facing prosecution or threat of prosecution, or must otherwise present an actual, ongoing, case or controversy within the meaning of the Constitution.[9] In the context of a First Amendment facial-overbreadth claim, however, a plaintiff has standing to attack an overly-broad statute when the statute's very existence causes the plaintiff to forego a constitutionally-protected activity.[10]
The Supreme Court "has permitted attacks on overly broad statutes without requiring that the person making the attack demonstrate that in fact his specific conduct was protected" because "broadly written statutes may have such a deterrent effect on free expression that they should be subject to challenge even by a party whose own conduct may be unprotected."[11]
Plaintiffs must show that they have suffered an injury in fact-or, in other words, an invasion of a legally protected interest which is concrete and particularized, and actual or imminent (not conjectural or hypothetical).[12] Next, Plaintiffs must show that there is a causal connection between their injury and Defendant's enforcement of Section 5-71-213(a)(3). Last, Plaintiff *932 must show that a favorable decision will likely (as opposed to speculatively) prevent their injury.
It is clear beyond peradventure that asking for gifts or charity is constitutionally-protected speech.[13]
Defendant asserts that Plaintiffs lack standing because the way in which they ask for gifts or charity (holding up signs at intersections or next to roadways) is not prohibited if it is not otherwise harassing, alarming, threatening, or does not create a traffic hazard or impediment.
I have no doubt that holding a sign asking for gifts or charity could "create a traffic hazard or impediment."[14] For example, Mr. Dilbeck testified that there have been times when a car in a line of traffic would slow down to give him something.[15] And, to a lesser-degree of certainty, that it is possible that holding a sign asking for gifts or charity might cause others to feel threatened, harassed, or alarmed.
Mr. Dilbeck moved to Tennessee to avoid being cited under Section 5-71-213(a)(3) ; however, he testified that, if Section 5-71-213(a)(3) was invalidated, then he would recommence begging in Arkansas when he passes through to visit his daughter in Missouri. In fact, he testified he would have even begged on the day of the hearing, but did not out of fear of being cited under Section 5-71-213(a)(3). Mr. Rodgers testified that he continues to beg, but hides his sign from the police and avoids certain areas to keep from being cited under Section 5-71-213(a)(3). This chilling effect is the actual injury that gives Plaintiffs standing.[16]
Defendant also argues that the mootness doctrine requires federal courts to refrain from "deciding a case if events have so transpired that the decision will neither presently affect the parties' rights nor have a more-than-speculative chance of affecting them in the future."[17] Defendant asserts that Plaintiffs do not allege "that any person has been issued a citation, been threatened with a citation, served a sentence, paid a fine, or otherwise endured punishment by the State for violation of Section 5-71-213(a)(3) (2017)."[18]
At the hearing, however, Defendant put on evidence that shows the Arkansas State Police (and other law-enforcement agencies) have been enforcing Section 5-71-213(a)(3).[19] But, even assuming that Defendant had declared it would not enforce Section 5-71-213(a)(3), the mootness doctrine would not require that I refrain from deciding this case because "[i]t is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice."[20]
In fine, Plaintiffs have standing.
*933 B. Abstention
Defendant urges me to abstain from deciding this case because the Arkansas Supreme Court might someday subject Section 5-71-213(a)(3) to a narrow construction.[21] It is true that federal courts should abstain from declaring a state statute facially invalid unless (1) it is not readily subject to a narrowing construction by the state courts, and (2) its deterrent effect on legitimate expression is both real and substantial.[22] Abstention, however, is the exception, not the rule-particularly when involving First Amendment facial challenges.[23]
Section 5-71-213(a)(3) is not readily subject to a narrowing construction by the state courts. Abstention is more likely applicable where a statute with ambiguous terms could be defined or limited by state court interpretation. Here, Defendant is adamant that Section 5-71-213(a)(3) is not ambiguous. To read Section 5-71-213(a)(3) in any way other than its plain and ordinary meaning would require judicial legislation, not just reinterpretation.[24] It is not a court's function to rewrite statutes to make them constitutional[25] -nor do Arkansas courts have a habit of doing so.[26]
As more fully explained below, the deterrent effect Section 5-71-213(a)(3) has on constitutionally-protected speech is real and substantial. Accordingly, I decline to abstain.
C. Facial Challenge
Under the First Amendment to the Federal Constitution, "Congress shall make no law ... abridging the freedom of speech." And, under the Fourteenth Amendment, neither may the State of Arkansas. Accordingly, lawmakers may not "restrict expression because of its message, its ideas, its subject matter, or its content," without a compelling reason to do so.[27] Even with a compelling reason to restrict speech based on its content, lawmakers may do so only in the least intrusive way possible. In other words, content-based speech restrictions must be narrowly tailored to promote a compelling government interest.[28]
1. Content Based
The level of scrutiny applied to the regulation of speech is determined by whether the regulation is content based or content neutral.[29] The governing test is *934 straightforward: if the statute describes speech by content, then it is content based.[30] On the other hand, if the regulation bans all speech, regardless of content, then it is content neutral.[31]
Section 5-71-213(a)(3) restricts only a certain species of speech (asking for gifts or charity). Thus, if two people created a traffic hazard or impediment by holding signs, but one asks passers-by to vote for a political candidate and the other asks passers-by to give to a charity, Section 5-71-213(a)(3) would apply only to the person whose sign asks passers-by to give to a charity. Accordingly, Section 5-71-213(a)(3) is a content-based restriction of constitutionally-protected speech.
2. Compelling Interest
Because Section 5-71-213(a)(3) is content-based, Defendant bears the burden to demonstrate that it can withstand strict scrutiny.[32] In other words, Defendant must show that the State has a compelling interest in treating requests for charity or gifts differently than other requests.[33]
Defendant asserts that the State's compelling interest is "public safety and motor vehicle safety."[34] "But even if this were the purpose of the ordinance, it nonetheless would be invalid ... even a traffic regulation cannot discriminate on the basis of content unless there are clear reasons for the distinctions."[35] Nothing in the record, nor common sense, suggests that a wide variety of other speech (e.g. , wearing a Statue of Liberty costume while waving to oncoming traffic and soliciting tax-return customers, encouraging folks to get right with the Lord, or stumping for a political candidate) would be less likely than begging to cause a traffic hazard or impediment.
Little Rock Police Officer Robert Hinman testified for Defendant at the hearing. Officer Hinman discussed a call he received, where an aggressive panhandler refused to accept "no" for an answer. After the bystander rebuffed the panhandler's request for money, the panhandler got increasingly close to the bystander "aggressively demanding money to the point where [the bystander] felt unsafe."[36] Eventually, the bystander attempted to go into the business, but the panhandler "was holding the door so ... [the bystander] had to duck under [the panhandler] to get into the business."[37]
This incident does little to show a compelling need for the revised version of Section 5-71-213(a)(3) because the incident occurred after the legislature had already passed the revised version, but before it took effect. Accordingly, the revised version was not spawned by this specific incident, and Officer Hinman was not powerless *935 to address the incident without the revised version.
Officer Hinman had at his disposal a whole arsenal of existing laws that addressed the actions of the aggressive panhandler. For example, Arkansas's harassment law makes it a crime to engage in conduct or repeatedly commit an act that alarms or seriously annoys another person "with purpose to harass, annoy, or alarm another person, without good cause and that serves no legitimate purpose."[38] Arkansas's disorderly-conduct law makes it a misdemeanor to obstruct "pedestrian traffic."[39] Arkansas's coercion law makes it a crime to compel or induce another person "to engage in conduct from which the other person has a legal right to abstain, or to abstain from engaging in conduct in which the other person has a legal right to engage, by purposeful conduct designed to instill in the other person a fear that, if a demand is not complied with, the actor or another person will [physically injury or confine any person]".[40] Arkansas's third-degree-assault law makes it a crime to "purposely create[ ] apprehension of imminent physical injury in another person."[41] Arkansas's third-degree-stalking law makes it a crime to knowingly commit an act that "would place a reasonable person in the victim's position under emotional distress[42] and in fear for his or her safety or a third person's safety."[43]
Officer Hinman testified that he did not believe the panhandler's actions fell within the scope of these laws because the panhandler's purpose was to get money-harassing, coercing, intimidating, disturbing, and obstructing were merely the means used to accomplish that purpose.[44] The House of Lords settled this question in England long ago: "One who throws a bomb in the Queen's carriage will not be heard to say he did not intend to injure the coachman"-or words to this precise effect. Accordingly, whenever this panhandler's attempts to get money became harassing, coercive, threatening, several other statutes stood ready. Whenever the panhandler blocked the bystanders pathway, the disorderly-conduct statute stood ready. Officer Hinman's decision not to deploy these statutes does not create a compelling need.
Defendant also argues that Section 5-71-213(a)(3) does not require intent;[45] however, I am not convinced that Defendant is correct on this point. Under Section 5-2-203(a) of the Arkansas Code, a law prescribing a culpable mental state (e.g. , purposely) that "does not clearly indicate that the culpable mental state applies to less than all of the elements of the offense, the prescribed culpable mental state applies to each element of the offense." Section 5-71-213(a)(3) prescribes a culpable mental state-purposely. It does not clearly indicate that purposely applies to less than all of the elements. When these two statutes ( Sections 5-2-203(a) and 5-71-213(a)(3) ) are read together, *936 Section 5-71-213(a)(3) seems to require that each element be committed purposely.
Arkansas State Police Trooper Corey Skarda testified that he was called to an incident where a pedestrian was standing on Interstate 430, in the lane of traffic, attempting to flag down someone to give him a ride. Trooper Skarda gave the pedestrian a ride,[46] and a warning for violating Section 5-71-213(a)(3)(C).
The pedestrian's conduct was prohibited under other laws. For example, Arkansas's highway-solicitations law makes it a crime for anyone to "solicit a donation ... (1) on a state highway; (2) within 10 feet of a state highway, if there is not a sidewalk along the highway; or (3) between the highway and a sidewalk, if there is a sidewalk within 10 feet of the highway."[47] Likewise, Arkansas already prohibits standing in a roadway to solicit a ride.[48]
Another method to address the concerns of traffic stopping or slowing down to give a panhandler money is to enforce Arkansas's prohibition against impeding the flow of traffic. Under Section 27-51-208, it is unlawful to drive a vehicle at "such a slow speed as to impede the normal and reasonable movement of traffic...."
Both incidents presented by Defendant, and nearly all of the hypothetical examples discussed at the hearing, are addressed by existing laws (e.g. , criminal trespass; harassment; assault; stopping, standing, or parking prohibited in specified places; highway solicitation; coercion; disorderly conduct; obstructing a highway or other public passage; soliciting rides prohibited; and impeding flow of traffic).[49] Accordingly, I fail to see the compelling need for the content-based restriction found in Section 5-71-213(a)(3).
Defendant has failed to show that Section 5-71-213(a)(3) can satisfy the rigorous constitutional standards that apply when government attempts to regulate expression based on its content. Accordingly, Plaintiffs are likely to prevail on the merits.
D. Preliminary Injunction
In determining whether to issue a preliminary injunction, I must consider (1) the threat of irreparable harm to Plaintiffs; (2) the balance between Plaintiffs' harm and any injury caused by issuing the order; (3) the probability Plaintiffs will succeed on the merits; and (4) the public interest.[50]
Because Section 5-71-213(a)(3) (a content-based restriction on speech that is not narrowly tailored to promote a compelling governmental interest) runs afoul of the Federal Constitution, Plaintiffs are likely to succeed on the merits.
Defendant asserts that the harm to Plaintiffs is small because it does not altogether prohibit Plaintiffs' exercise of speech (both Plaintiffs still beg, just in different places or in hiding). This type of theory, often referred to as "the theory of the de minimis constitutional violation,"[51] suggests that criminalizing protected speech is an insignificant violation of the *937 Constitution. Criminalizing protected speech is never insignificant.
The very purpose of a Bill of Rights was to withdraw certain subjects from the vicissitudes of political controversy, to place them beyond the reach of majorities and officials and to establish them as legal principles to be applied by the courts. One's right to life, liberty, and property, to free speech, a free press, freedom of worship and assembly, and other fundamental rights may not be submitted to vote; they depend on the outcome of no elections.[52]
I can think of no injury caused by preventing Defendant from enforcing a law that is plainly unconstitutional-particularly considering other laws cover the concerns raised by Defendant. If anything, not enforcing Section 5-71-213(a)(3) will save Defendant (and perhaps other agencies) resources that would have otherwise been wasted prosecuting panhandlers under what appears, at this point, to be a plainly-unconstitutional law.
The public's interest is best served by preventing governmental intrusions into the rights protected under the Federal Constitution.
Defendant's request that I enjoin Defendant from enforcing Section 5-71-213(a)(3) against only Plaintiffs in this case is DENIED.
CONCLUSION
For the reasons set out above, Defendant's Motion to Dismiss is DENIED; Plaintiffs' Motion for Preliminary Injunction is GRANTED; and Defendant is ENJOINED from enforcing Section 5-71-213(a)(3) until after a final order is entered.
IT IS SO ORDERED this 26th day of September, 2017.

Doc. Nos. 12, 19.

Doc. No. 10.

Unless otherwise noted, the facts in the background section are undisputed, and are taken from Plaintiffs' Complaint (Doc. No. 1) and Motion for Preliminary Injunction (Doc. No. 2).

Ark. Code Ann. § 5-71-213(a)(3) (1995).

Rodgers, et al. v. Bryant , No. 4:16-CV-00775-BRW, 2016 WL 10591006 (E.D. Ark. Nov. 22, 2016).

Ark. Code Ann. § 5-71-213(a)(3) (2017).

Doc. No. 1.

Doc. No. 24, p. 173 of 189

Id.

Broadrick v. Oklahoma , 413 U.S. 601, 611-612, 93 S.Ct. 2908, 37 L.Ed.2d 830 (1973) ; Republican Party of Minn., Third Cong. Dist. v. Klobuchar , 381 F.3d 785, 792 (8th Cir. 2004).

Bates v. State Bar of Arizona , 433 U.S. 350, 380, 97 S.Ct. 2691, 53 L.Ed.2d 810 (1977).

Lujan v. Defenders of Wildlife , 504 U.S. 555, 559-61, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) (internal quotation marks and citations omitted).

Loper v. New York City Police Dep't , 999 F.2d 699 (2d Cir. 1993) ; Speet v. Schuette , 726 F.3d 867, 874 (6th Cir. 2013) ; Clatterbuck v. City of Charlottesville , 708 F.3d 549, 557 (4th Cir. 2013) (abrogated on other grounds by Reed v. Town of Gilbert, Ariz. , --- U.S. ----, 135 S.Ct. 2218, 192 L.Ed.2d 236 (2015) ).

Ark. Code Ann. § 5-71-213(a)(3)(C) (2017).

Doc. No. 24, p. 42-43 of 189.

See e.g., United Food and Com. Workers Intern. Union, AFL-CIO, CLC v. IBP, Inc. , 857 F.2d 422, 430 (8th Cir. 1988).

Doc. No. 12 (citing City of Erie v. Pap's A.M. , 529 U.S. 277, 287, 120 S.Ct. 1382, 146 L.Ed.2d 265 (2000) ).

Doc. No. 12.

Doc. No. 24.

City of Mesquite v. Aladdin's Castle, Inc. , 455 U.S. 283, 289, 102 S.Ct. 1070, 71 L.Ed.2d 152 (1982).

Doc. No. 12.

See Erznoznik v. City of Jacksonville , 422 U.S. 205, 216, 95 S.Ct. 2268, 45 L.Ed.2d 125 (1975) (internal citations omitted).

City of Houston, Tex. v. Hill , 482 U.S. 451, 467, 107 S.Ct. 2502, 96 L.Ed.2d 398 (1987).

U.S. v. Stevens , 559 U.S. 460, 462, 130 S.Ct. 1577, 176 L.Ed.2d 435 (2010).

Erznoznik , 422 U.S. at 216, 95 S.Ct. 2268 (1975) (refusing to abstain where only construction that would sufficiently limit an ordinance would require rewriting); In re Giller , 127 B.R. 215, 218 (Bankr. W.D. Ark. 1990) ("It is not the Court's function to rewrite statutes to make them constitutional.").

Cox v. Commissioners of Maynard Fire Imp. Dist. No. 1 , 287 Ark. 173, 176, 697 S.W.2d 104, 106 (1985) (refusing to rewrite state law so it became acceptable because doing so would amount to "a judicial intrusion upon the legislative prerogative and violates the constitutional doctrine of separation of powers").

Reed v. Town of Gilbert, Ariz. , --- U.S. ----, 135 S.Ct. 2218, 2226, 192 L.Ed.2d 236 (2015) (citing Police Dept. of Chicago v. Mosley , 408 U.S. 92, 95, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972) ).

U.S. v. Playboy Ent. Group, Inc. , 529 U.S. 803, 813, 120 S.Ct. 1878, 146 L.Ed.2d 865 (2000).

Phelps-Roper v. Koster , 713 F.3d 942, 950 (8th Cir. 2013).

Comite de Jornaleros de Redondo Beach v. City of Redondo Beach , 657 F.3d 936, 951-52 (9th Cir. 2011) (citing City of Los Angeles v. Alameda Books, Inc. , 535 U.S. 425, 448, 122 S.Ct. 1728, 152 L.Ed.2d 670 (2002) ) (Kennedy, J., concurring).

E.g., Heffron v. Int'l Soc'y for Krishna Consciousness, Inc. , 452 U.S. 640, 649, 101 S.Ct. 2559, 69 L.Ed.2d 298 (1981) (holding that a regulation that allowed solicitation in only certain places at a state fair was content neutral because it applied "evenhandedly to all who wish[ed] to distribute and sell written materials or to solicit funds").

Phelps-Roper , 713 F.3d at 950 ; A.C.O.R.N. v. St. Louis County , 930 F.2d 591, 594 (8th Cir. 1991).

Reed , 135 S.Ct. at 2231.

Doc. No. 24, p. 11 of 189.

Erznoznik , 422 U.S. at 215, 95 S.Ct. 2268.

Doc. No. 24.

Id.

Ark. Code Ann. § 5-71-208.

Ark. Code Ann. § 5-71-207(a)(5).

Ark. Code Ann. § 5-13-208.

Ark. Code Ann. § 5-13-207.

"Emotional distress" means "significant mental suffering or distress," but "does not require that the victim sought or received medical or other professional treatment or counseling." Ark. Code Ann. § 5-71-229(f)(2).

Ark. Code Ann. § 5-71-229(c)(1)

Doc. No. 24.

At the hearing, the following exchange took place:
The Court: "In other words, your answer to my question-Is intent involved? -is a definitive, monosyllabic no. "
Defendant's Lawyer: "Yes, Your Honor."

A first-class example of the oft-used police mantra, "to protect and serve. "

Ark. Code Ann. § 5-67-107.

Ark. Code Ann. § 27-51-1205 ("No person shall stand in a roadway for the purpose of soliciting a ride from the driver of any private vehicle.").

Ark. Code Ann. §§ 5-29-203, 5-71-208, 5-13-207, 27-51-1302, 5-67-107, 5-13-208, 5-71-207, 5-71-214, 27-51-1205, 27-51-208.

Fed. R. Civ. P. 65 ; see Dataphase Sys., Inc. v. C L Sys., Inc. , 640 F.2d 109, 113 (8th Cir. 1981) (en banc ).

Newdow v. Rio Linda Union Sch. Dist. , 597 F.3d 1007, 1013-14 (9th Cir. 2010).

W. Va. State Bd. of Educ. v. Barnette , 319 U.S. 624, 638, 63 S.Ct. 1178, 87 L.Ed. 1628 (1943).