KENNETH S. HIXSON, Judge
The Clay County Circuit Court adjudicated appellant P.J. a juvenile delinquent on three counts, finding that he committed one count of second-degree sexual assault and two counts of third-degree assault. P.J. was fifteen years old when these acts allegedly occurred, and there were three separate victims. The trial court placed P.J. on one year probation and ordered him to complete forty hours of community service. On appeal, P.J. argues that there was insufficient evidence to support the delinquency adjudications. We affirm.
Pursuant to Ark. Code Ann. § 5-14-125(a)(1) (Supp. 2017), a person commits second-degree sexual assault if the person engages in sexual contact with another person by forcible compulsion. "Sexual contact" means any act of sexual gratification involving the touching, directly or through clothing, of the sex organs, buttocks, or anus of a person or the breast of a female. Ark. Code Ann. § 5-14-101(11) (Supp. 2017). Pursuant to Ark. Code Ann. § 5-13-207(a) (Repl. 2013), a person commits third-degree assault if he purposely creates apprehension of imminent physical injury in another person.
In reviewing the sufficiency of the evidence in a delinquency case, we apply the same standard of review as in criminal cases; that is, we view the evidence in the light most favorable to the State, considering only the proof that tends to support the finding of guilt. T.R. v. State , 2018 Ark. App. 328, 552 S.W.3d 452. We will affirm if the adjudication is supported by substantial evidence, which is evidence that is of sufficient force and character to compel a conclusion one way or the other without resorting to speculation or conjecture. Id. In considering the evidence presented below, we will not weigh the evidence or assess the credibility of witnesses, because those are questions for the factfinder. J.N.A. v. State , 2017 Ark. App. 502, 532 S.W.3d 582.
M.C., a thirteen-year-old girl, was the alleged victim of the second-degree sexual assault. M.C. testified that she met P.J. in the school band and that they started liking each other. M.C. stated that it "went into a whole new category" when P.J. would touch her breasts or her butt. On the night of a basketball game, M.C. was coming back from the band room when she ran into P.J. in a courtyard outside of the gymnasium. According to M.C., P.J. tried to kiss her and she told him "no." Then P.J. shoved her against a brick wall. M.C. tried to push him off her, but P.J. kept shoving himself on her. Then P.J. put his left hand on her shoulder and shoved his right hand down her pants. M.C. testified that P.J. touched the inside of her vagina. M.C. stated that she did not want him to do that and that she kept telling him to stop.
M.F., a fourteen-year-old girl, was the alleged victim of one of the third-degree assaults. M.F. went to school with P.J. and *310 they were friends. M.F. testified that they would sometimes walk together and that P.J. would grab her butt, causing her to jump. When she would jump, P.J. would do it again to see if she would jump again. P.J. would also touch her on her breasts and her vagina, and M.F. would tell him to stop or move his hand, making it very clear that she did not want that contact. On one occasion in a park, M.F. was walking on leaves, and P.J. told her that if she kept doing it he would hit her on her butt and that it would hurt. P.J. hit her on her butt, causing M.F. to scream because it "hurt a lot." M.F. stated that there was a hand-shaped bruise where P.J. had hit her.
A fifteen-year-old girl named A.C. was the alleged victim of the other third-degree assault. A.C. had met P.J. on the school bus and they became friends. A.C. testified that one day they were sitting and talking in a park when P.J. grabbed her hoodie, pulled it away from her chest, and put his hand down her bra. A.C. jerked away, covered her chest, and pushed her hoodie back to her chest. A.C. went home after that. She stated that, because of what happened that day, she did not meet with P.J. again.
P.J.'s friends from school testified as defense witnesses. M.R. testified that he was at the park with P.J. and M.F. and did not observe anything inappropriate. T.B. testified that she had never seen P.J. touch a female but that she had seen M.C. follow P.J. around and touch him inappropriately. K.F. testified that she had never seen P.J. act aggressively.
P.J. testified on his own behalf, and he denied touching any of the alleged victims inappropriately. P.J. testified that M.C. had always been aggravated at him because he did not want to date her. He thought that M.C. "got these other girls to testify against me because she wanted me to go away."
In this appeal, P.J. challenges the sufficiency of the evidence to support each adjudication of delinquency. He first challenges his adjudication for second-degree sexual assault committed against M.C.
The only argument P.J. makes with respect to his delinquency adjudication for second-degree sexual assault is that the State failed to prove that the sexual contact was through forcible compulsion. Arkansas Code Annotated section 5-14-101(2) (Supp. 2017) defines "forcible compulsion" as "physical force or a threat, express or implied, of death or physical injury to or kidnapping of any person." M.C. testified that P.J. shoved her against the wall, put his hands down her pants, and touched the inside of her vagina. While conceding that it was clear that M.C. did not want him to touch her in that manner, P.J. asserts that she never stated that he employed physical force or a threat of death, physical injury, or kidnapping. P.J. claims that there was no evidence of violence and no evidence of whether the sexual contact ceased or continued when M.C. voiced her objection. P.J. argues that because the forcible-compulsion element was missing, there was insufficient evidence that he committed second-degree sexual assault.
We conclude that P.J.'s challenge to the sufficiency of the evidence supporting the trial court's finding that he committed second-degree sexual assault is not preserved for review. This is because, in making his motion for dismissal at the close of the evidence, P.J. did not advise the trial court of the element of the offense that the State failed to prove. With respect to this offense, P.J. argued below that "[a]s for the sexual assault, your honor, I would ask the court to take the credibility of the witness into account, and I believe that, at that point then, your honor, the State has not *311 produced, beyond a reasonable doubt, any evidence of a sexual assault."
Under the Juvenile Code, the Arkansas Rules of Criminal Procedure apply to delinquency proceedings. Ark. Code Ann. § 9-27-325(f) (Supp. 2017). Rule 33.1(b) of the Arkansas Rules of Criminal Procedure provides that in a nonjury trial, if a motion for dismissal is to be made, it shall be made at the close of the evidence and shall state the specific grounds therefor. Rule 33.1(c) provides that the failure of a defendant to challenge the sufficiency of the evidence at the times and in the manner required in subsection (b) will constitute a waiver of any question pertaining to the sufficiency of the evidence to support the judgment. Rule 33.1(c) further provides that a motion for dismissal based on insufficiency of the evidence must specify the respect in which the evidence is deficient. The appellate courts strictly construe Rule 33.1. N.L. v. State , 2017 Ark. App. 227, 519 S.W.3d 360.
In P.J.'s motion for dismissal, he did not challenge the sufficiency of the evidence with respect to any of the elements of second-degree sexual assault, including the forcible-compulsion element that he now attempts to challenge on appeal. Accordingly, P.J. failed to preserve his sufficiency challenge for this offense.[1]
P.J. also challenges the sufficiency of the evidence with respect to the two counts of third-degree assault he was found to have committed against M.F. and A.C. Third-degree assault requires proof that the accused purposely creates apprehension of imminent physical injury in another person. Ark. Code Ann. § 5-13-207(a) (Repl. 2013). P.J. argues on appeal, as he did below, that the State failed to prove that he created an apprehension of imminent physical injury with respect to either M.F. or A.C. Therefore, these challenges are preserved for review. P.J. contends that although M.F. and A.C. clearly testified that they did not want to be touched in the manner each of them was touched by P.J., neither of them stated that she was in fear or apprehension of imminent physical injury. Nor did either alleged victim testify that it was her belief that it was P.J.'s intention to cause such apprehension. Thus, P.J. contends that his two adjudications for third-degree assault should be reversed.
We hold that substantial evidence supports both of P.J.'s adjudications for third-degree assault. M.F. testified that P.J. threatened to hit her on her butt so hard that it would hurt, and then he did, in fact, hit her so hard on her buttocks that it made her scream and left a hand-shaped bruise. The threat communicated by P.J. and the circumstances thereof constituted substantial evidence that P.J. purposely created in M.F. an apprehension of immediate physical harm. A.C. testified that a physical confrontation with P.J. ensued when P.J. grabbed her hoodie, pulled it away from her chest, and reached his hand into her bra. A.C. responded to P.J.'s actions by jerking away, pushing her hoodie back to her chest, and going home. A.C. subsequently avoided contact with P.J. as a result of this event. From A.C.'s testimony, the trial court could conclude without resort to conjecture that P.J. purposely caused in A.C. an apprehension of immediate physical injury. Having concluded that substantial evidence supports both of P.J.'s *312 adjudications for third-degree assault, these adjudications are affirmed.
Affirmed.
Gladwin and Switzer, JJ., agree.

We observe that even had the forcible-compulsion element of this offense been raised below and preserved for review, it would be of no avail. The State sufficiently proved forcible compulsion where M.C. testified that P.J. shoved her against the wall, she tried to push him off her but he kept shoving himself on her, and he put one hand on her shoulder and one hand down her pants while she kept telling him to stop.