RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 23a0097p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

MARIO BANUELOS-JIMENEZ,

                      *Petitioner*,

v.

MERRICK B. GARLAND, Attorney General,

                      *Respondent*.

> No. 22-3331

───────────────

On Petition for Review from the Board of Immigration Appeals;
No. A 200 684 221.

Decided and Filed:  May 10, 2023

Before:  GILMAN, McKEAGUE, and GRIFFIN, Circuit Judges.

───────────────

## COUNSEL

**ON BRIEF:**  Nathan R. Bogart, BOGART, SMALL + ASSOCIATES, Fayetteville, Arkansas, for Petitioner.  Rebekah Nahas, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Respondent.

       GRIFFIN, J., delivered the opinion of the court in which McKEAGUE, J., joined. GILMAN, J. (pp. 9–14), delivered a separate dissenting opinion.

───────────────

## OPINION

───────────────

       GRIFFIN, Circuit Judge.

       Petitioner Mario Banuelos-Jimenez petitions for review of the Immigration Judge's and Board of Immigration Appeal's (BIA's) decisions denying cancellation of removal.  The immigration judge concluded, and the BIA affirmed, that his state conviction for third-degree

assault on a family member was a crime of violence and, therefore, he was statutorily ineligible for cancellation of removal. We agree and deny the petition for review.

## I.

Banuelos-Jimenez, a native and citizen of Mexico, arrived in the United States in 1999. The Department of Homeland Security began removal proceedings against him in 2010, but those proceedings were administratively closed and re-calendared at the Department's request. Then in 2017, Arkansas police arrested Banuelos-Jimenez following a "screaming" incident with his wife. He was charged with, and pleaded guilty to, third-degree assault on a family or household member, Ark. Code Ann. § 5-26-309. The DHS subsequently re-initiated removal proceedings in 2018.

Banuelos-Jimenez applied for cancellation of removal. The Immigration Judge denied his application, concluding that the Arkansas statute was a crime of violence: Banuelos-Jimenez acted at least recklessly and "crimes of violence encompass not only crimes that require specific intent but also . . . engage in reckless conduct." Administrative Record, p. 67. Banuelos-Jimenez appealed, and the BIA affirmed. Despite an intervening change in law when the Supreme Court held that a crime of violence does not encompass reckless conduct, *see Borden v. United States*, 141 S. Ct. 1817 (2021), the BIA nevertheless concluded that Banuelos-Jimenez's conviction was a crime of violence—his conduct was also purposeful and, thus, necessarily involved a threat of force capable of causing physical pain or injury. This petition for review followed.

## II.

We review questions of law de novo, including whether a prior offense constitutes a crime of violence under 18 U.S.C. § 16. *Van Don Nguyen v. Holder*, 571 F.3d 524, 528 (6th Cir. 2009). "Where the BIA reviews the immigration judge's decision and issues a separate opinion, rather than summarily affirming the immigration judge's decision," as happened here, "we review the BIA's decision as the final agency determination." *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009).

Banuelos-Jimenez is eligible for cancellation if he meets certain criteria, among which is that he "has not been convicted of an offense under" 8 U.S.C. § 1227(a)(2).  *See* 8 U.S.C. § 1229b(b)(1)(C).  Section 1227(a)(2) lists several crimes, including "a crime of domestic violence," which means "any crime of violence (as defined in [18 U.S.C. § 16]) against a person committed by a current or former spouse of the person . . . ."  8 U.S.C. § 1227(a)(2)(E)(i).  Under 18 U.S.C. § 16(a), a crime of violence is "an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another."[1]  "Physical force" in this context is "*violent* force—that is, force capable of causing physical pain or injury to another person."  *Johnson v. United States*, 559 U.S. 133, 140 (2010).  It is not merely "offensive touching," which may constitute physical force under other statutes.  *Compare United States v. Castleman*, 572 U.S. 157, 163 (2014) (interpreting 18 U.S.C. § 921(a)(33)(A)(ii)), *with Matter of Dang*, 28 I. & N. Dec. 541, 543–49 (BIA 2022).

Banuelos-Jimenez was convicted of violating Ark. Code Ann. § 5-26-309(a), which provides:  "A person commits third degree assault on a family or household member if the person purposely creates apprehension of imminent physical injury to a family or household member."  To determine if this is a crime of violence, we use the categorical approach.  *See Mellouli v. Lynch*, 575 U.S. 798, 804–06 (2015).  This approach "focus[es] solely on whether the elements of the crime of conviction sufficiently match the elements" of a crime of violence, "while ignoring the particular facts of the case."  *Mathis v. United States*, 579 U.S. 500, 504 (2016).  A crime is categorically a crime of violence if the "elements are the same as, or narrower than, those of the generic offense" in § 16(a).  *Id.* (emphasis omitted).  Banuelos-Jimenez concedes that the statute is not divisible, so the only issue before the panel is whether it is overbroad.  *See United States v. Burris*, 912 F.3d 386, 393 (6th Cir. 2019) (en banc).

The issue here, then, is whether "purposely creat[ing] apprehension of imminent physical injury" necessarily involves "the use, attempted use, or threatened use of physical force."  We have addressed similar statutes before, concluding that a fear of physical injury necessarily results from a use or threat of physical force.  For example, we have held that a Tennessee statute

---

[1]The Supreme Court has held in *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018), that subsection 16(b) was unconstitutionally vague.

proscribing the commission of a robbery by "putting the person in *fear*" was a crime of violence. *United States v. Mitchell*, 743 F.3d 1054, 1058–59 (6th Cir. 2014) (emphasis added). Under Tennessee law, "fear" was "fear of bodily injury and of present personal peril from violence offered or impending." *Id*. at 1059. "Therefore, the commission of a robbery through fear, which in Tennessee reduces to the fear of bodily injury from physical force offered or impending, directly corresponds to [the] 'use . . . or threatened use of physical force.'" *Id*. (ellipsis in original). And in *United States v. Fuller-Ragland*, we concluded that a similar Michigan statute prohibiting robbery by "put[ting] the person in fear" was a crime of violence. 931 F.3d 456, 460–65 (6th Cir. 2019). Michigan law required "the act causing the victim to be put in fear—however slight—must be 'capable of causing physical pain or injury to another person.'" *Id*. at 462 (citation omitted). Therefore, the underlying act *causing* the fear necessarily included at least a threat of force: "'putting in fear' of physical injury involves a 'threatened use' of at least enough force to overcome a victim's resistance." *Id*. at 465. *See also United States v. Verwiebe*, 874 F.3d 258, 261 (6th Cir. 2017), *overruled on other grounds by Borden*, 141 S. Ct. 1817 ("[C]rimes requiring proof of serious physical injury necessarily require proof of violent physical force.").

We are not alone on this issue, for our sister circuits agree. In *United States v. Melchor-Meceno*, the Ninth Circuit concluded that a statute criminalizing menacing, i.e., "knowingly plac[ing] or attempt[ing] to place another person in fear of imminent serious bodily injury," was a crime of violence. 620 F.3d 1180, 1184 (9th Cir. 2010) (citation omitted). "It is impossible to conceive of a situation involving fear of imminent serious bodily injury without a threat of force." *Id*. at 1185. The statute required a "defendant to cause *fear* of injury rather than simply causing the injury itself," but the "means of placing a person in fear of imminent serious bodily injury is a threat of force." *Id*. *See also United States v. De La Fuente*, 353 F.3d 766, 770 (9th Cir. 2003) ("[A] criminal statute requiring the creation and use of a 'fear of . . . unlawful injury' includes the element of a 'threatened use of physical force.'" (alteration in original)). In *United States v. Herron*, the Tenth Circuit held that a statute prohibiting "knowingly plac[ing] or attempt[ing] to place another person in fear of imminent serious bodily injury . . . easily satisfies the requirement of the threatened use of physical force against the person of another." 432 F.3d 1127, 1138 (10th Cir. 2005) (internal quotation marks omitted). And in *United States v. Forrest*,

the Eighth Circuit concluded that "[a] threat that creates a fear of imminent serious bodily injury is a threat of physical force," and, thus, a crime of violence. 611 F.3d 908, 910–11 (8th Cir. 2010) (internal quotation marks omitted). The Seventh Circuit has reached a similar conclusion. *See United States v. Lewis*, 405 F.3d 511, 514 (7th Cir. 2005) (holding that a statute proscribing robbery while "putting any person in fear" of physical injury is a crime of violence).

The most persuasive of these cases comes from the Ninth Circuit, which has addressed language nearly identical to that in § 5-26-309(a). In *United States v. Ceron-Sanchez*, the court concluded that an Arizona statute, Ariz. Rev. Stat. § 13-1203(A)(2), proscribing "[i]ntentionally placing another person in reasonable apprehension of imminent physical injury" was a crime of violence. 222 F.3d 1169, 1172–73 (9th Cir. 2000), *overruled on other grounds by Fernandez-Ruiz v. Gonzales*, 466 F.3d 1121 (9th Cir. 2006) (en banc). Because the force needed was "violent in nature," it necessarily "require[d] either the use, attempted use, or threatened use of force against the person of another." *Id*. at 1172–73 (citation omitted). This holding was reaffirmed in *United States v. Cabrera-Perez*: this statute "satisfie[d] the first prong of 18 U.S.C. § 16 because '[i]ntentionally placing another person in reasonable apprehension of imminent physical injury,' has as an element 'the use, attempted use, or threatened use of physical force against the person or property of another.'" 751 F.3d 1000, 1007 (9th Cir. 2014) (internal citations omitted; second alteration in original). This was distinguished from other statutes that only proscribed "reckless" conduct. *Id*.; *cf. Fernandez-Ruiz*, 466 F.3d at 1132.

These two cases are particularly instructive because the Arkansas statute at issue proscribes the same exact conduct. Both statutes require an "apprehension of imminent physical injury." Ark. Code Ann. § 5-26-309(a); Ariz. Rev. Stat. § 13-1203(A)(2). And both require this to be done purposefully or intentionally (which, in criminal statutes, carry the same meaning). *See, e.g.*, Model Penal Code § 1.13(12) (defining "intentionally" as "purposely"); *Sykes v. United States*, 564 U.S. 1, 12–13 (2011), *overruled on other grounds by Johnson v. United States*, 576 U.S. 591 (2015) (noting that conduct done "knowingly or intentionally" is generally "purposeful"). Under both statutes, a person must intentionally or purposely create an apprehension of physical injury. Physical force is one that causes physical injury; thus, physical injury necessarily results from physical force. Consequently, an *apprehension* of injury must

and will result from a threat of physical injury.  And the statutes limit this conduct to intentional conduct, rather than reckless or otherwise, indicating that a person must commit the "use, attempted use, or threatened use of force" with the intent to do so.  *Cabrera-Perez*, 751 F.3d at 1007.  While the statutes may not require the perpetrator to intend *actual* harm, he or she still intends to *threaten* harm.  The latter is all that § 16(a) requires.  To the extent that the defendant only recklessly or negligently threatened someone, that would not be covered by § 5-26-309 because the statute requires "purposely" creating the fear.  *Cf. Melchor-Meceno*, 620 F.3d at 1184 ("[A] predicate offense must [also] require intentional use, attempted use, or threatened use of force to constitute a crime of violence . . .; neither recklessness nor negligence is enough." (citation omitted; second alteration in original)).  Because the two statutes are materially identical, holding that § 5-26-309(a) is not a crime of violence would create discord with another circuit.

Banuelos-Jimenez presents several examples purportedly showing that the Arkansas statute is overbroad, but we find none persuasive.  Banuelos-Jimenez states that one could be guilty under the statute for an ill-received prank, such as by placing an empty bucket on an open door such that a passerby would fear harm when it falls on him.  A petitioner must show "a realistic probability, not a theoretical possibility" that the state would criminalize this conduct, and it is decidedly unrealistic that this conduct would be charged.  *See United States v. Paulk*, 46 F.4th 399, 403 (6th Cir. 2022) (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007)).  But even assuming the state would prosecute this conduct, these actions still intentionally threaten physical injury—a crime of violence under § 16(a) does not necessarily require the actual intention to *use* force, merely an actual intention to *threaten* force.  Even if the actor did not intend to do real harm, he still has purposely created a fear of harm resulting from an intentional threat of harm (namely, the bucket falling on the person's head).  Petitioner also provides an example like his underlying conviction:  tempers become heated and two parties get into a shouting match where one creates an "apprehension of imminent physical injury."  But as the caselaw above demonstrates, one does not fear injury without a threat of injury.  *See Fuller-Ragland*, 931 F.3d at 465.  In a shouting match, merely yelling at another about the weather, someone's cooking, or one's relatives does not necessitate a threat of injury—such a threat must

exist.  The person threatening another may not fully intend to use or attempt to use force, but he or she may still purposely make statements that constitute a threat of harm.

The dissent's examples are also unpersuasive.  First, shouting "fire" in a crowded theatre still involves an intentional threat of physical injury:  those in the theater would fear dying in the threatened fire.  Even if the fire is not real, the threat to one's physical health is intentionally made.  Then, in *P.J. v. State*, a juvenile was convicted under a materially identical Arkansas statute for "grabb[ing] [a woman's] hoodie, pull[ing] it away from her chest, and reach[ing] his hand into her bra."  578 S.W.3d 307, 311 (Ark. Ct. App. 2019).  This conduct certainly involved the use, attempted use, or threatened use of force—the defendant actually grabbed a woman's shirt and reached down it.  That is a use of physical force that either caused physical injury or, at the very least, threatened physical injury (such as further non-consensual sexual acts).  And the "aggressive panhandler" described in *Rodgers v. Bryant* employed a similar threat by prohibiting a bystander from entering a nearby business by "holding the door" and by "aggressively demanding money to the point where [the bystander] felt unsafe."  301 F. Supp. 3d 928, 934 (E.D. Ark. 2017) (alteration in original).  Even if the panhandler never intended actual harm to the bystander, his actions purposely created a threat of physical harm by conditioning access to a business on payment of money.

In sum, § 5-26-309 necessarily involves a threat of physical harm, because one cannot fear harm without being threatened by it.  Caselaw unequivocally establishes the logical connection between the two:  "[i]t is impossible to conceive of a situation involving fear of imminent serious bodily injury without a threat of force."  *Melchor-Meceno*, 620 F.3d at 1185.  Therefore, we conclude that § 5-26-309 is categorically a crime of violence because it involves the "threatened use of force against the person of another."  18 U.S.C. § 16(a).

III.

For the foregoing reasons, we deny the petition for review.

_____

**DISSENT**

_____

GILMAN, Circuit Judge, dissenting.

## I.  INTRODUCTION

In holding that Banuelos-Jimenez's state-law conviction matches the Immigration and Nationality Act's (INA's) definition of a crime of violence, the majority (1) fails to distinguish between the threat of *injury* as opposed to the threat of *force*, and (2) relies upon the faulty assumption that the *apprehension* of injury can result *only* from the threat of injury.  The majority also overlooks the key point that the Arkansas statute under which Banuelos-Jimenez was convicted—which has not previously been examined by the federal courts with respect to its application to the INA's crime-of-violence definition—has been interpreted by courts in Arkansas to apply in scenarios that do not satisfy that definition.  *See P.J. v. State*, 578 S.W.3d 307, 311-12 (Ark. Ct. App. 2019); *Rodgers v. Bryant*, 301 F. Supp. 3d 928, 935 (E.D. Ark. 2017).  I therefore respectfully dissent.

## II.  DISCUSSION

**A.     The majority fails to distinguish between the threat of *injury* as opposed to the threat of *force*, and relies upon the faulty assumption that the *apprehension* of injury can result *only* from the threat of injury**

Banuelos-Jimenez was convicted under a state statute prohibiting a person from "purposely creat[ing] apprehension of imminent physical injury to a family or household member."  Ark. Code Ann. § 5-26-309.  Because the statute requires only the *apprehension of* imminent physical injury, rather than physical injury in fact, the use of physical force is not necessary for a conviction.  *See id.*  Nor does the plain text of the statute suggest that the attempted or threatened use of physical force is an element of the offense.  *See id.*  As long as the defendant (with or without the use of physical force) purposefully places a family or household member in apprehension of imminent physical injury (whether or not threatened to be inflicted by the defendant himself), then he may be convicted under Ark. Code Ann. § 5-26-309.

Although some of the statutes at issue in the cases relied on by the majority are worded similarly to Banuelos-Jimenez's statute of conviction, the relevant state courts have specifically construed those statutes to match the INA's crime-of-violence definition. The same cannot be said for the Arkansas statute at issue in this case.

In *United States v. Mitchell*, 743 F.3d 1054 (6th Cir. 2014), for example, our court found that "the commission of a robbery through fear, which in Tennessee reduces to the fear of bodily injury *from physical force offered or impending*, directly corresponds to [18 U.S.C.] § 924(e)(2)(B)(i)'s 'use, attempted use, or threatened use of physical force.'" 743 F.3d at 1059 (emphasis added) (quoting 18 U.S.C. § 924(e)(2)(B)(i)). The Tennessee statute, as interpreted by the courts of that state, thus requires that the defendant intentionally create in the victim an apprehension of bodily injury specifically through the use or threatened use of physical force, necessarily satisfying the INA's crime-of-violence definition.

*United States v. Fuller-Ragland*, 931 F.3d 456 (6th Cir. 2019), is similarly distinguishable for reasons that the majority itself identifies. In that case, "Michigan law required [that] 'the act causing the victim to be put in fear—however slight—must be capable of causing physical pain or injury to another person.'" Majority Op. at 4 (quoting *Fuller-Ragland*, 931 F.3d at 462). "Therefore, the underlying act *causing* the fear necessarily included at least a threat of force . . . ." *Id.* (emphasis in original). Ark. Code Ann. § 5-26-309, by contrast, does not require the victim's apprehension to be created by an act of the defendant that is *itself* capable of causing physical pain or injury to the victim (such as, for example, throwing an object across a room near the victim's head.)

Indeed, the elements of Ark. Code Ann. § 5-26-309 can be met simply by committing an inappropriate prank, such as intentionally shouting "fire!" in a crowded theater. The precise terms of the statute are satisfied by the defendant's statement in the above scenario because, as the majority recognizes, "those in the theater [] fear dying in the threatened fire" and "the threat to one's physical health is intentionally made" by the defendant. *Id.* at 7. This is so even though the defendant does not personally threaten to cause the feared harm. Rather, he creates the apprehension of imminent physical injury from an external source.

But to constitute a crime of violence under the INA, a state statute must have "as an element the use, attempted use, or threatened use of physical *force* against the person or property of another." 18 U.S.C. § 16(a) (emphasis added). The threat of physical *injury*, unrelated to the defendant's use of physical force, is not sufficient. *See Mathis v. United States*, 579 U.S. 500, 504 (2016) (requiring courts to consider "whether the elements of the crime of conviction sufficiently match the elements of [the federal removal provision]"). In failing to distinguish injuries that require the use of physical force from injuries that do not, the majority wrongly conflates the elements of the Arkansas statute with the elements of a crime of violence under the INA.

One need not resort to hypotheticals, however, to determine that Ark. Code Ann. § 5-26-309 is overbroad vis-à-vis the INA's "crime of violence." An evaluation of how courts in Arkansas have construed this and similar statutes leads to the same conclusion.

**B.      Arkansas courts have applied Banuelos-Jimenez's statute of conviction to scenarios that are overbroad with respect to the INA's definition of a crime of violence**

This court is "bound by the [state supreme c]ourt's interpretation of its criminal law." *United States v. Burris*, 912 F.3d 386, 398 (6th Cir. 2019) (en banc). After all, "[n]either this court 'nor any other federal tribunal has any authority to place a construction on a state statute different from the one rendered by the highest court of the State.'" *United States v. Mitchell*, 743 F.3d 1054, 1060 (6th Cir. 2014) (quoting *Johnson v. Fankell*, 520 U.S. 911, 916 (1997)). If the state's highest court does not further illuminate the meaning of a state statute, "intermediate state appellate court decisions constitute the next best indicia of what state law is." *Burris*, 912 F.3d at 398 (quoting *United States v. Gardner*, 823 F.3d 793, 803 (4th Cir. 2016)); *see also id.* at 401 (rejecting the government's argument that "a few (potentially) outlier lower [state] court decisions" cannot disprove a categorical match between a state and federal statute). Whatever the merits of the decisions of our sister circuits with respect to similar statutes, the decisions of the courts in Arkansas are dispositive with respect to Ark. Code Ann. § 5-26-309. The majority's concern that "holding that § 5-26-309(a) is not a crime of violence would create discord with another circuit," Majority Op. at 6, is thus unwarranted.

In *P.J. v. State*, 578 S.W.3d 307 (Ark. Ct. App. 2019), the Arkansas Court of Appeals affirmed the defendant's conviction under Ark. Code Ann. § 5-13-207, which is identical to Banuelos-Jimenez's statute of conviction but for the requirement that the victim be a family or household member. *Id.* at 311. The facts leading to P.J's conviction were recounted by the state court as follows:

> A.C. testified that a physical confrontation with P.J. ensued when P.J. grabbed her hoodie, pulled it away from her chest, and reached his hand into her bra. A.C. responded to P.J.'s actions by jerking away, pushing her hoodie back to her chest, and going home. A.C. subsequently avoided contact with P.J. as a result of this event. From A.C.'s testimony, the trial court could conclude without resort to conjecture that P.J. purposely caused in A.C. an apprehension of immediate physical injury.

*Id.*

The Board of Immigration Appeals (BIA) has already rejected the majority's conclusion that conduct equivalent to P.J.'s, repulsive as such behavior is, constitutes physical force. In *Matter of Dang*, 28 I. & N. Dec. 541 (BIA 2022), the BIA held that Louisiana's simple battery statute did not require physical force because the state's courts had interpreted the statute as encompassing not just "a forcible striking with the hand or stick, or the like, but includ[ing] every touching or laying hold, however trifling, of another person, or his clothes, in an angry, revengeful, rude, insolent, or hostile manner." 28 I. & N. Dec. at 550-51 & n.5 (quoting *State v. Robinson*, 549 So. 2d 1282, 1284 (La. Ct. App. 1989)). Rather, under *Dang*, physical force must either be "capable of causing physical pain or injury to another person" or "sufficient to overcome the slightest resistance." *Id.* at 544, 548-49. I see no principled basis for distinguishing between the physical force required by P.J.'s "actually grabb[ing] a woman's shirt and reach[ing] down it," *see* Majority Op. at 7, and the physical force required by the "touching . . . of another person . . . in an angry, revengeful, rude, insolent, or hostile manner," *see Dang*, 28 I. & N. Dec. at 550-51 n.5 (quoting *Robinson*, 549 So. 2d at 1284).

P.J.'s conviction was valid under Arkansas law because his actions intentionally created in A.C. an apprehension of imminent physical injury, even though his actions did not entail the use or threatened use of force as defined by the BIA in *Dang*. Nor did P.J.'s conduct involve the use of violent force necessary to overcome resistance by the victim, because A.C. in fact

successfully resisted: She "jerk[ed] away, push[ed] her hoodie back to her chest, and [went] home." *P.J.*, 578 S.W.3d at 311. And precisely because these facts were sufficient to sustain a conviction under Arkansas law, the statute is overbroad with respect to the INA's crime-of-violence definition.

The majority nonetheless asserts that P.J.'s actions must have "either caused physical injury or, at the very least threatened physical injury." Majority Op. at 7. But in so hypothesizing, the majority inserts facts into the state-court record that simply were not present. Although such behavior is likely to be mentally injurious, there is no indication from *P.J.* that the nonconsensual sexual touching—or even similar nonconsensual touching in the future—was *physically* injurious to A.C. *See P.J.*, 578 S.W.3d at 310-11.

Similarly, in *Rodgers v. Bryant*, 301 F. Supp. 3d 928 (E.D. Ark. 2017), the court observed that Ark. Code Ann. § 5-13-207 would have been an appropriate vehicle to "address[] the actions of [an] aggressive panhandler." *Id.* at 935. Such actions were described by the court as follows:

> [A]n aggressive panhandler refused to accept "no" for an answer. After the bystander rebuffed the panhandler's request for money, the panhandler got increasingly close to the bystander "aggressively demanding money to the point where [the bystander] felt unsafe." Eventually, the bystander attempted to go into the business, but the panhandler "was holding the door so . . . [the bystander] had to duck under [the panhandler] to get into the business."

*Id.* at 934 (first alteration added). Although the panhandler's actions might well have purposefully created an apprehension in the bystander of imminent physical injury, the court made no mention of the use, attempted use, or threatened use of physical force in this factual scenario. *See id.*

The majority posits that, "[e]ven if the panhandler never intended actual harm to the bystander, his actions purposely created a threat of physical harm by conditioning access to a business on payment of money." Majority Op. at 7. But the bystander's apprehension would not necessarily have been reasonable, because she was free to simply refrain from entering the store and continue on her way. Nothing in the factual scenario presented in *Rodgers*, such as blocking

a door or repeatedly asking for money, *required* the use of violent physical force or the threat thereof.

Finally, the BIA erred in failing to consider Banuelos-Jimenez's "argument that the conduct underlying his conviction did not amount to a threat of physical force" because the categorical approach "preclude[d its] consideration of the underlying facts of the conviction." Adjudicators ordinarily disregard the underlying facts of a noncitizen's conviction because they "must 'presume that the conviction rested upon nothing more than the least of the acts criminalized' under the state statute." *Mellouli v. Lynch*, 575 U.S. 798, 805 (quoting *Moncrieffe v. Holder*, 569 U.S. 184, 190-91 (2013)). But adjudicators are not prohibited from reviewing the conduct underlying a noncitizen's conviction if they tentatively conclude that the state statute is not overbroad with respect to the INA and, as here, the noncitizen puts forth his own record of conviction as additional evidence of overbreadth. *See, e.g.*, *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007) ([T]o find that a state statute creates a crime outside the generic definition of a listed crime in a federal statute[,] . . . . an offender, of course, may show that the statute was so applied in his own case."); *Matter of Ferreira*, 26 I. & N. Dec. 415, 419, 421-22 (BIA 2014) ("[A] motion to terminate [immigration removal proceedings] should be granted if the respondent can . . . 'at least point to his own case or other cases in which the [Connecticut] state courts in fact did apply the statute in the special (nongeneric) manner for which he argues.'" (final alteration in original) (quoting *Duenas-Alvarez*, 549 U.S. at 193)).

If Banuelos-Jimenez was convicted only for "screaming very excitedly" as he claims, then his record of conviction would lend further support to the notion that the use, attempted use, or threatened use of physical force is unnecessary under Ark. Code Ann. § 5-26-309. The BIA thus committed legal error in its application of the categorical approach. This error entitles Banuelos-Jimenez to have his claim heard by the BIA, using the correct legal standard, in the first instance.

The majority declines to address the BIA's misstep. It instead suggests that Banuelos-Jimenez must have expressly threatened his partner with physical force because, "[i]n a shouting match, merely yelling at one another about the weather, the cooking, or one's in-laws does not necessitate a threat of injury." Majority Op. at 6. But any threat of physical force is

entirely absent from the record. The record shows only that Banuelos-Jimenez, whose testimony the Immigration Judge ultimately deemed credible, was convicted for "screaming very excitedly." That is not a crime of violence.

Finally, I note that the Arkansas legislature has shown itself perfectly capable of narrowing the scope of conduct encompassed by a statute when it so chooses. Under Ark. Code Ann. § 5-12-102(a), for example, "[a] person commits robbery if, with the purpose of committing a felony or misdemeanor theft or resisting apprehension immediately after committing a felony or misdemeanor theft, the person *employs or threatens to immediately employ physical force upon another person*." (emphasis added). The Arkansas legislature did not similarly narrow the scope of conduct prohibited by Ark. Code Ann. § 5-26-309. I would honor that choice.

## III.  CONCLUSION

For all of the foregoing reasons, I respectfully dissent.